**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

KIMBERLEE K.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Civil Action No. 20-4493 (RK)

**MEMORANDUM OPINION**

<u>**KIRSCH, District Judge**</u>

**THIS MATTER** comes before the Court on Kimberlee K.'s ("Kimberlee")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Kimberlee's request for disability insurance benefits. (ECF No. 5.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

## I.      BACKGROUND

In this appeal, the Court must answer three questions. *First,* does substantial evidence support Judge Roxanne Fuller's Step Three determination that no impairment or combination of impairments met the criteria of any listed impairment? *Second*, does substantial evidence support Judge Fuller's residual functional capacity ("RFC") determination? *Third,* are there jobs that exist in significant numbers in the national economy that Kimberlee can do?

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

## A.    PROCEDURAL POSTURE

Kimberlee, now 54 years old, filed an application for a period of disability insurance benefits on June 21, 2016.[2] (Administrative Record ("AR") at 194.)[3] The Social Security Administration (the "Administration") denied the request both initially, (AR at 110), and on reconsideration (*Id.* at 116). Thereafter, Kimberlee requested a hearing, (*Id.* at 126), and Judge Fuller held a video hearing on September 27, 2018, at which Kimberlee, who was represented by counsel, and a vocational expert testified (*Id.* at 54–90). On February 27, 2019, Judge Fuller issued a written decision finding Kimberlee was not disabled. (*Id.* at 27–45.) Kimberlee appealed that decision, and the Administration's Appeals Council affirmed Judge Fuller's decision. (AR at 19– 26.) This appeal followed, in which Plaintiff is representing herself *pro se*. (ECF No. 1.) The Record was filed on July 13, 2021 (ECF No. 16), Kimberlee filed her moving brief on September 22, 2022 (ECF No. 27), the Commissioner filed an opposition brief on October 31, 2022 (ECF No. 28), and Kimberlee filed a reply brief on December 1, 2022 (ECF No. 31). This matter was transferred to the undersigned on May 16, 2023. (ECF No. 34.)

## B.    JUDGE FULLER'S DECISION

In her February 27, 2019 opinion, Judge Fuller found that Kimberlee was not disabled under the prevailing Administration regulations. (*See generally* AR at 32–45.) To reach this decision, Judge Fuller applied the five-step process for determining whether an individual is disabled as set forth in 20 C.F.R. § 404.1520(a). (*Id.* at 31–32.) At Step One, Judge Fuller found that Kimberlee had not engaged in substantial gainful activity between the alleged onset date,

---

[2] The ALJ's decision gives the date of the original application as May 27, 2017 (AR at 30), while the application included in the record is June 21, 2016. Although unexplained, the discrepancy is not meaningful.

[3] The Administrative Record ("Record" or "AR") is available at ECF No. 16. This Memorandum Opinion will reference only page numbers in the Record without the corresponding ECF numbers.

January 1, 2008, and the date last insured, December 31, 2011. (*Id.* at 32 (citing 20 C.F.R. § 404.1571).) At Step Two, Judge Fuller found that Kimberlee suffered from four medically-determinable severe impairments and several non-severe impairments, including obesity. (*Id.* at 32–33 (citing 20 C.F.R. § 404.1520(c)).) At Step Three, Judge Fuller determined that Kimberlee did not have "an impairment or combination of impairments" that met the severity of one of the Administration's listed impairments (the "Listings"). (*Id.* at 33–35 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) As a precursor to Step Four, Judge Fuller concluded that Kimberlee had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with several additional limitations. (*Id.* at 35.) At Step Four, Judge Fuller concluded that Kimberlee "is unable to perform any past relevant work." (*Id.* at 44 (citing 20 C.F.R. § 404.1565).) Finally, at Step Five, Judge Fuller heard testimony from a vocational expert and concluded that there were jobs that existed in significant numbers in the national economy that Kimberlee could have performed. (*Id.* at 44-45 (citing 20 C.F.R. §§ 404.1569, 404.1569a).)

This appeal concerns Judge Fuller's Step Three determination, the RFC determination, and Step Five determination.

At Step Two, Judge Fuller distinguished between Kimberlee's severe and non-severe impairments. Judge Fuller found that Kimberlee suffered from the medically-determinable severe impairments of lumbar degenerative disc disease, osteoarthritis, depression, and anxiety. (*Id.* at 32.) Judge Fuller also considered several of Kimberlee's non-severe impairments, including obesity. (*Id.* at 33.) Kimberlee stood "5'8 and weighed 227 pounds (calculated body mass index (BMI) (BMI of 36.0; BMI over 30.00 is considered obese)." (*Id.* (citing Ex. 6F/8).) Kimberlee did not claim "any limitations due to her weight," (*id.*), and Judge Fuller found Kimberlee's obesity to be no more than a slight work-related limitation, and thus, not severe. (*Id.* (citing SSR 02-1P,

3

2002 WL 34686281 (Sept. 12, 2022) (the Administration's regulation instructs the ALJ to consider the effects of obesity on musculoskeletal impairments, among others, as obesity commonly complicates such issues).)

At Step Three, Judge Fuller considered whether any of Kimberlee's severe impairments or combination of severe impairments met the requirements for Listing 1.02 (major dysfunction of a joint), Listing 1.04 (disorders of the spine), Listing 12.04 (depressive, bipolar disorders), and Listing 12.06 (anxiety and obsessive-compulsive disorder). (*Id.* at 33–35.) Judge Fuller found that Kimberlee's impairments did not meet any Listing. Regarding Listing 1.02, which assesses limitations on fine and gross movements resulting from a joint impairment. (*Id.* at 33.) Judge Fuller noted the lack of evidence in the record indicating "any difficulty with fine and gross manipulation." (*Id.*) Kimberlee underwent right shoulder surgery and was diagnosed with osteoarthritis in the same shoulder. (*Id.* (citing Exs. 3F/4, 33F/8).) While Kimberlee reported "intermittent numbness in the right hand," the physical findings in the record showed "normal sensation and strength in the upper extremities." (*Id.* (citing Exs. 33F/22, 6F/5, 33F/3).)

Regarding Listing 1.04, Judge Fuller cited the lack of evidence showing Kimberlee's "inability to ambulate effectively." (*Id.* at 33-34 (citing Exs. 10F/127, 135, 146, 33F/3, 30).) While there was evidence of injuries to Kimberlee's back, including degenerative disc disease and mild foraminal stenosis, Judge Fuller recognized the majority of the medical opinion evidence and treatment records indicated that Kimberlee's gait "was generally normal." (*Id.*) There was no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, as would be required to establish the Paragraph A, B, or C requirements of Listing 1.04. (*Id.* at 33.)

Regarding Kimberlee's mental impairments, Judge Fuller assessed whether Kimberlee satisfied Paragraph B of Listings 12.04 and 12.06, which required the claimant to show either one

extreme limitation or two marked limitations in four broad areas of functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; (4) adapt or manage oneself. (*Id.* at 34–35 (discussing 20 C.F.R. Pt. 404, Subpt. P, App. 1).) Judge Fuller found Kimberlee had only a moderate limitation in the first three broad areas. (*Id.* at 34.) Judge Fuller noted that Kimberlee reported some memory issues, difficulty engaging in social interactions, and focusing on tasks or paying attention for longer than ten to fifteen minutes. (*Id.*) However, Judge Fuller found record evidence showing Kimberlee's ability to interact with others and process information. (*Id.*) Kimberlee's medical providers noted she could follow instructions, comply with treatment orders, and respond to their questioning. (*Id.*) Kimberlee was able to shop in public, go to church and restaurants, and travel to Florida. (*Id.* (citing Exs. 5E, 44F/30, 35, 36F/60).) The record evidence also showed that Kimberlee could, on occasions, perform activities requiring concentration, such as preparing simple meals, using the computer, and tending a small farm. (*Id.* (citing Exs. 5E, 44F/1, 20, 31, 49F/5).) Finally, Judge Fuller found that Kimberlee only had a mild limitation on her ability to adapt or manage herself because objective evidence showed she got along well with her medical providers, controlled her temper, and maintained good personal hygiene. (*Id.* at 34-35 (citing Exs. 33F/30, 50F/2).)[4]

As a precursor to Step Four, Judge Fuller concluded that Kimberlee had the RFC to perform "sedentary work" with the following limitations:

> [She can] occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stop, crouch, kneel, and crawl; frequently reach and overhead reach with the right dominant arm; occasionally be exposed to moving mechanical parts; occasionally operate a motor vehicle; occasionally be exposed to

---

[4] Judge Fuller also found insufficient evidence to satisfy Paragraph C of the Listings 12.04 and 12.06 because Kimberlee did not present the requisite evidence of a mental disorder lasting two years and requiring ongoing mental health treatment that diminishes her symptoms. (AR at 35.)

> unprotected heights; perform routine and repetitive tasks; and only
> occasionally interact with the public.

(*Id.* at 35.) To determine this RFC, Judge Fuller evaluated the extensive administrative record, including Kimberlee's subjective testimony as well as objective medical records and opinions. (*Id.* at 35-44.) Judge Fuller considered whether Kimberlee's medically determinable impairments—her degenerative disc disease, shoulder osteoarthritis, and mental health impairments—limited Kimberlee's ability to work. (*Id.* at 39.) While Kimberlee testified that she "did not cook, shop, or clean her home" during the relevant period, (*id.* at 41), Judge Fuller noted that Kimberlee wrote in her July 2016 Function Report that she "fed the dogs and cats, sometimes helped on the farm . . . , prepared simple meals, used a computer, watched TV, and sometimes went to church" (*id.* at 41 (citing Ex. 5E).) This discredited Kimberlee's statements "concerning the intensity, persistence, and limiting effects" of her symptoms. (*Id.* at 39). While Judge Fuller did not find any of Kimberlee's impairments to preclude her from working, she was "mindful of [Kimberlee's] lumbar degenerative disc disease and right shoulder osteoarthritis" and limited her "to a range of sedentary work during the relevant period." (*Id.* at 43). Judge Fuller accounted for Kimberlee's anxiety and diagnosed depression, as well as her subjective testimony to how her pain and medication affected her concentration, by limiting Kimberlee's RFC to "performing routine and repetitive tasks with only occasional interaction with the public." (*Id.* at 43-44).

Regarding Step Five, Judge Fuller sought the input of a vocational expert ("VE") to determine the extent to which the RFC's limitations hindered Kimberlee's ability to perform unskilled sedentary jobs. The VE testified that jobs existed in the national economy for an individual with Kimberlee's age, education, work experience, and RFC, including as a (1) mail sorter (Dictionary of Occupational Titles ("DOT") Code 239.687-014), (2) inspector (DOT Code 726.684-050), and (3) systems surveillance monitor (DOT Code 379.367-010). (*Id.* at 45.)

## II.   LEGAL STANDARD

### A.   STANDARD OF REVIEW

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (citation omitted). The Court may affirm, modify, or reverse the Commissioner's decision. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Id.* On review the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). Because the ALJ "cannot reject evidence for no reason or for the wrong reason," the ALJ's decision must explain why "probative evidence has been rejected is required so that a reviewing

court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

### B.   ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy."

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). In order to determine the claimant's ability at Step Four, the ALJ must determine the claimant's RFC, which is "what a [claimant] can still do despite his limitations." *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) (citing 20 C.F.R. § 416.945(a)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

### III.   DISCUSSION

The Court has carefully reviewed *pro se* Plaintiff's briefing and framed her objections to Judge Fuller's decision. The Court reads Kimberlee's submissions to contest (1) Judge Fuller's

determination that she did not meet Listing 1.02 or 1.04, (2) Judge Fuller's RFC determination that allegedly did not account for Kimberlee's back and shoulder pain, and (3) Judge Fuller's reliance on the VE's testimony. The Court addresses each in turn.

## A.     STEP THREE – LISTING IMPAIRMENT

Kimberlee argues that Judge Fuller erred in finding that her severe impairments did not satisfy any of the four considered Listings. (ECF No. 31 at 8–10; ECF No. 27 at 2). Specifically, Kimberlee cites the medical record relating to her treatment for back and shoulder pain to argue that her injuries met Listing 1.04 (disorders of the spine), (ECF No. 31 at 8–10), and evidence of hand numbness to argue that her injuries met Listing 1.02 (major dysfunction of the spine), (ECF No. 27 at 2; ECF No. 31 at 10). Kimberlee also challenges the state's consultants' opinions, which she claims were rendered without relying on the full record.

To establish Listing 1.02, a claimant must show one of two Paragraph requirements, either the inability to ambulate effectively based on the "involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle)" or the inability to "perform fine and gross movements effectively" based on the "involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02 (2019). Kimberlee's argument appears to target the second possible requirement (Paragraph B). (ECF No. 29). An inability to perform fine and gross movements effectively is "an extreme loss of function of both upper extremities." *Id.* at § 1.00B2c.

Judge Fuller's determination that Kimberlee did not meet Listing 1.02 is supported by substantial evidence. Judge Fuller considered Kimberlee's subjective reports of "intermittent numbness in her right hand." (AR at 33 (citing Ex. 33F/22).) Judge Fuller did not ignore or dismiss this evidence, but weighed it against several other physical findings that "showed normal sensation

and strength in the upper extremities during the relevant period." (*Id.* (citing Exs. 6F/5, 33F/3).)
While "an ALJ is obligated to give 'serious consideration' to a claimant's subjective complaints,
this does not mean that the ALJ must fully credit and defer to a claimant's testimony regarding her
pain." *Smith v. Astrue*, 359 F. App'x 313, 317–18 (3d Cir. 2009) (quoting *Burns v. Barnhart*, 312
F.3d 113, 129 (3d Cir. 2002)). "Rather, it simply means that the ALJ must take care to address
such evidence in the course of [her] findings." *Smith*, 359 F. App'x at 317. Here, Judge Fuller
acknowledged Kimberlee's subjective complaints of numbness in her right arm. (AR at 33 (citing
Ex. 33F/22).) Judge Fuller viewed these subjective complaints in light of treatment records that
contradicted these claims. (*Id.* at 33.)

To establish Listing 1.04, a claimant must show one of three Paragraph requirements,
generally characterized as nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis
resulting in pseudoclaudication. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04 (2019). Kimberlee
argues that the Paragraph C requirement applied to her, which requires showing "[l]umbar spinal
stenosis resulting in pseudoclaudication, established by finding on appropriate medically
acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in
inability to ambulate effectively, as defined in 1.00B2b." *Id.* An inability to ambulate effectively
is "an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously
with the individual's ability to independently initiate, sustain, or complete activities." *Id.* at
§ 1.00B2b. Kimberlee points to evidence on the record that her degenerative disc disease resulted
in lower back and leg pain (examples of pseudoclaudication) to argue that she met the Paragraph
C requirements. (ECF No. 31 at 8–10.)

Judge Fuller found that Paragraph C was not met because the record did not indicate that
Kimberlee "was unable to ambulate effectively during the relevant period, as gait was generally

10

normal." (AR at 33 (citing Exs. 10F/127, 135, 146, 33F/3, 30).) Kimberlee relies on her subjective claims and a single piece of opinion testimony from her physical therapist to show her inability to ambulate. (ECF No. 31 (citing Ex. 44F/25).) However, Judge Fuller cites several instances in the record where Kimberlee's treating physicians found her "gait normal." (AR at 34 (citing Exs. 10F/127, 135, 146, 33F/3, 30).) While Listing 1.04 does not require consistent physical examination findings, the ALJ's decision to weigh several reports of "normal gait" over one objective report of difficulty ambulating is supported by substantial evidence. *See Plummer*, 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects;"); *Keveanos v. Berryhill*, 2019 WL 1500624, at *7 (D.N.J. April 5, 2019) ("In determining the amount of weight to accord a treating source opinion, it is also well-settled that an ALJ may discount such an opinion when it conflicts with other objective tests or examination results." (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202-03 (3d Cir. 2008))). Because Judge Fuller cited sufficient evidence in the record to support her claim that Kimberlee maintained the ability to ambulate effectively, the ALJ did not err in her 1.04 Listing analysis.

Even if the Court did not find that substantial evidence supported Judge Fuller's Listings determination, Kimberlee's claim would fail because any error is harmless. An ALJ's determination at Step Three is subject to ordinary harmless error review. *Woodson v. Comm'r of Soc. Sec.,* 661 F. App'x 762, 765 (3d Cir. 2016) (citing *Shinseki v. Sanders,* 556 U.S. 396, 409-10, 129 S. Ct. 1696, 173 L.Ed.2d 532 (2009)). Beyond her subjective claims, Kimberlee did not cite any objective medical evidence showing how her shoulder injury resulted in an inability to conduct fine manipulations, which involve the use of wrists, hands, and fingers to pinch, manipulate, and finger. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02; *Woodson,* 661 F. App'x at 766 (Claimants

"failure to 'affirmatively point [ ] to specific evidence that demonstrates [s]he would succeed at step three. In other words, any error would be harmless.'").

Finally, Kimberlee challenges the opinions of the four state agency medical consultants who examined her and found no medically-determinable impairment. (AR at 42 (citing Exs. 1A/4; 1A/6; 3A/6.) Kimberlee argues that the consultants relied on an incomplete record, resulting in incorrect opinions. (ECF No. 31 at 10.) However, Judge Fuller gave "little weight" to the state agency medical consultant opinions because they contradicted the objective record evidence. (AR at 42). Instead, with respect to Kimberlee's degenerative disc disorder and osteoarthritis, Judge Fuller looked to the MRI reports and pain management schedule to support her finding such impairments severe. (*Id.*) Regarding Kimberlee's depression and anxiety, Judge Fuller relied on treating physician's opinion testimony diagnosing Kimberlee with depression and her medication schedule which includes an anti-depressant and an anti-anxiety prescription. [5] (*Id.* at 43.) Therefore, any error related to the consulting physicians' opinions, if any – even if based on an incomplete record – were harmless because they did not impact Judge Fuller's determination of Kimberlee's disability.

## B.    PRE-STEP FOUR - RFC DETERMINATION

The Court interprets Kimberlee's briefing to pose two objections to the RFC determination. *First*, Kimberlee argues that her RFC fails to account for the "severe pain and exertional limitations" relating to her shoulder and back. (ECF No. 27 at 4; ECF No. 31 at 11.) *Second*, Kimberlee contends that Judge Fuller failed to account for all her non-exertional limitations,

---

[5] Kimberlee cites *Rosa v. Callahan*, 168 F.3d 72 (2d Cir. 1999), to argue that the state agency consultants' review of an allegedly incomplete record supports remand. (ECF No. 31 at 10.) In *Rosa*, the Second Circuit remanded the case because the ALJ's decision to reject a treating physician's diagnosis" was "merely" based on consulting physicians "report[ing] no similar findings." 168 F.3d at 881. In contrast to the ALJ in *Rosa*, Judge Fuller gave little weight to the opinions of the consulting physicians.

namely her difficulty with "fine manipulative skills" based on numbness, rashes, and eczema on her hands. (ECF No. 27 at 4; ECF No. 31 at 12.)

Starting with Kimberlee's argument regarding her shoulder and back, she cites her shoulder surgery, continued pain, and back issues requiring a spinal cord stimulator as evidence that she cannot do her assigned RFC. (ECF No. 27 at 4.) The Court disagrees. The ALJ outlines the extensive objective medical evidence, subjective complaints, and opinion testimony considered in Judge Fuller's RFC assessment. With respect to Kimberlee's shoulder, Judge Fuller acknowledged Kimberlee's treatment history for her right shoulder in September 2008 but noted that the impairment improved with surgical intervention. (AR at 39–40 (citing Exs. 33F/8, 41F/1-2).) Subsequent physical therapy showed "improvement in range of motion and strength," while medical imaging yielded "rather mild" findings. (Id. at 40 (citing Exs. 44F/24, 33F/27, 5F/11).) Following surgery, the record evidence showed Kimberlee's improved range of motion in her shoulder despite her subjective claims of continued pain and tenderness. (*Id.* at 40 (citing Ex. 33F/22).)

Likewise with respect to Kimberlee's back issues, the ALJ considered the medical imaging showing several small disc protrusions that Dr. Loguidice found "not clinically significant." (*Id.* (citing Ex. 5F/5–7).) Slightly worsening disc degeneration was not accompanied by physical findings that supported the limitations Kimberlee alleged. (*Id.* (citing Exs. 4F, 33F/15–16, 5F/3–5, 6F/8).) During the relevant period, Plaintiff displayed a "normal gait." (*Id.* (citing Exs. 10F/127, 136, 147, 33F/3, 30).) Judge Fuller noted Kimberlee's reports of "pain to palpation of the bilateral sacroiliac joints and bilateral paraspinals . . . ." (*Id.* (citing Ex. 33F/15-16).) Judge Fuller weighed this evidence against reports of Kimberlee being able to "heel-toe walk without weakness" and exhibited "normal strength, sensation, and reflexes, with negative straight leg" raises except for

one. (*Id.* (citing Ex. 5F/3).) Lastly, Judge Fuller considered Kimberlee's pain management regime for her spine disorder, and determined that her injection therapy and bi-monthly pain management and physical therapy sessions did not "show a treatment regime to preclude working." (AR at 41.)

The Court finds no basis to conclude that Judge Fuller's RFC determination was not supported by substantial evidence with respect to its limitation on Plaintiff's use of her back and arm. Judge Fuller's RFC determination specifically accounts for the limitations imposed by Kimberlee's right shoulder osteoarthritis and degenerative disc disease by "limiting her to sedentary work with postural limitations, no more than frequent reaching and reaching overhead with her right arm, and no more than occasional exposure to moving mechanical parts and unprotected heights and occasionally operating a motor vehicle." (*Id.* at 35.) While Judge Fuller did not credit each of Kimberlee's claims of pain, she adequately explained her reason for not doing so. *See Keveanos*, 2019 WL 1500624 at *11 ("An ALJ may reject, or only partially credit, subjective complaints if they are not credible in light of the other evidence of record." (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999))). Likewise, Judge Fuller fully discussed Kimberlee's history of steroid injections and physical therapy to manage her pain and accounted for them in her RFC determination. Therefore, Kimberlee's claim against the RFC assessment "impermissibly seeks the Court to re-weigh the evidence" and find in Kimberlee's favor. *See Morales*, 225 F.3d at 316.

Kimberlee also argues that the ALJ failed to account for her non-exertional limitations related to her hand numbness and eczema, which affected her motor skills. (EFC No. 27 at 4.) Kimberlee argues that because an RFC with a full unskilled sedentary occupational base requires significant use of one's hands, any limitation on the ability to use both hands and fingers would "result in a significant erosion of the unskilled sedentary occupational base." (ECF No. 31 at 11.)

Judge Fuller considered Kimberlee's intermittent numbness in her left hand, a symptom of her osteoarthritic shoulder. However, Judge Fuller noted physical findings that showed Kimberlee had "normal sensation and strength in the upper extremities" and "grip strength [of] 70 pounds on the left and 85 pounds on the right." (AR at 33 (citing Ex. 6F/5, 33F/3).) In weighing the evidence, Judge Fuller determined that Kimberlee's numbness in her left arm was not as serious as Kimberlee alleged it to be. (*Id.* at 43.) As a result, Judge Fuller's decision not to limit Kimberlee's RFC on account of her numbness is supported by substantial evidence. *Keveanos*, 2019 WL 1500624 at *11.

Prior to raising it in the instant appeal, Kimberlee never argued that her eczema was an impairment that limited her ability to use her hands. Some reports of eczema exist in the medical record. (EFC No. 31 at 12 (citing Exs. 34F/1, 10F/111, 116, 118, 123, 127.) When asked if she had any limitations relating to the use of her hands in her disability application, Kimberlee did not mention any difficulties. (Ex. 5E/7). While the ALJ is required to consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," the ALJ is "not required to discuss every tidbit of evidence included in the record." *Hur v. Barnhart,* 94 F. App'x 130, 133 (3d Cir. 2004). While this Court may, under narrow circumstances, consider evidence not raised before the ALJ, the claimant must offer a compelling explanation why such evidence was not raised earlier. *See Matthews*, 239, F.3d at 590. Kimberlee fails to offer any explanation as to why she never raised eczema as a limitation on her ability to use her hands. As a result, the ALJ did not err by not accounting for Kimberlee's eczema in the RFC determination. *Id.*[6]

---

[6] Kimberlee's brief raises, in passing, an objection that Judge Fuller failed to account for her mental health impairment or obesity in her RFC determination. (EFC No. 27 at 2.) Neither argument has merit. Judge Fuller adequately accounted for Kimberlee's anxiety and depression, which is supported by objective medical evidence in the record, i.e. diagnosis of severe depression and an incident of self-harm. (AR at 43.) Judge Fuller considered Kimberlee's subjective claims of mental impairments, that she could not leave her home, could not "have a conversation without crying," and experienced "memory and concentration

C.     **STEP FIVE – VOCATIONAL EXPERT TESTIMONY AS TO AVAILABLE JOBS IN NATIONAL ECONOMY**

Kimberlee contends that the ALJ made several errors at Step Five. (ECF No. 31 at 13–15.) First, Kimberlee asserts that the capabilities required by two of the jobs the vocational expert ("VE") testified she could perform contradicted the ALJ's RFC assessment. Next, Kimberlee argues that the jobs offered by the VE are not available in her geographic region. Finally, Kimberlee also claims that her exertional and non-exertional limitations preclude her from doing any of the jobs suggested by the VE.

Kimberlee asserts that the vocational expert's ("VE") testimony, on which the ALJ relied, that Kimberlee could perform the job of inspector was wrong because the inspector job description requires "constant reaching" while Kimberlee's RFC assessment permitted no more than "frequent" reaching. (ECF No. 31 at 13.) The Commissioner agrees. (ECF No. 28 at 19 n.1.)[7] Further, Kimberlee argues that the VE offered "mail sorter" as an available job, but incorrectly

---

difficulties." (AR at 36.) Judge Fuller found Kimberlee's subjective complaints less credible as they conflicted with the treatment notes that described Kimberlee's mood as "normal." (AR at 41 (citing Exs. 10F/118, 50F/2).) In addition, Kimberlee "did not seek any psychiatric or mental health care during the relevant period" and there was no record of Kimberlee needing any "inpatient mental health treatment or hospitalization" due to her mental health during the relevant period. (AR at 41.) While the ALJ cannot dismiss a claimant's subjective complaints without reason, the ALJ "may reject, or only partially credit, subjective complaints if they are not credible in light of the other evidence of record." *Schaudeck*, 181 F.3d at 431. Judge Fuller did so here and accounted for any mental impairment by limiting Kimberlee's RFC to "routine, repetitive tasks with only occasional interaction with the public." (AR at 43–44.)

To challenge Judge Fuller's consideration of obesity on appeal, Plaintiff is required to explain how her obesity could have affected the ALJ's decision. *Rutherford v. Barnhart*, 399 F.3d 546, 522 (3d Cir. 2005) (affirming ALJ's decision where claimant "had not specified how 'considering obesity' would affect the five-step analysis undertaken by the ALJ"). Plaintiff has not done so here. Furthermore, Judge Fuller reviewed and discussed the medical opinions discussing Kimberlee's obesity. (AR at 42 (discussing Ex. 33F/15).). This is sufficient on review to establish that Judge Fuller gave Kimberlee's obesity adequate "if indirect consideration of that condition." *Id.*

[7] See defendant's brief stating that "the Commissioner concedes that the job of inspector requires "constant" reaching, which conflicts with the ALJ's RFC assessment for no more than frequent reaching. Even if the Court finds that the VE and ALJ erred by referencing the DOT code for the job of tube operator instead of the DOT code for mail sorter, the VE testified that Plaintiff could perform the job of systems surveillance monitor" which complies with RFC assessment and exists in necessary numbers.

assigned the DOT Code for tube operator, which requires capabilities Kimberlee's RFC assessment does not permit. (ECF No. 31 at 13–14.)

However, the Court need not decide whether the VE's errors were harmful because the VE recommended the systems surveillance monitor job, which exists in significant numbers in the national economy and does not conflict with Kimberlee's RFC assessment. (AR at 44–45.) Therefore, any error is harmless and is not a basis for reversal. *See also Sanchez v. Comm'r of Soc. Sec.*, 705 F. App'x 95, 98-99 (3d Cir. 2017) (finding that 18,000 jobs were sufficiently "significant" to support the ALJ's decision), *citing, Johnson v. Chater*, 108 F.3d 178, 180 (finding that 10,000 jobs in the national economy was sufficiently significant).

Kimberlee is also incorrect that the ALJ could not rely on the VE's testimony regarding the availability of national, rather than regional, jobs. (ECF No. 27 at 4–5.) Kimberlee misinterprets SSR 83-11 as mandating that the VE's testimony reference jobs in the regional, not national, economy. SSR 83-11, 1983 WL 31252 (Jan. 1, 1983). However, it is well settled that this provision is interpreted to mean whether "there is work in the national economy that [a claimant] can do." *Brininger v. Berryhill*, 2017 WL 3634187 (M.D. Pa. Aug. 7, 2017); *see also Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (non-precedential) (holding that the focus at Step Five is on jobs in the national, not regional, economy).

Lastly, Kimberlee argues that she is unable to perform the third job the ALJ cited— surveillance monitor—because of her anxiety and the requirement to finger controls. (ECF No. 31 at 15.) However, this argument is "really best understood as challenges to the RFC assessment itself." *Rutherford v. Barnhart*, 399 F.3d 546, n. 8 (3d Cir. 2005). As noted above, the Court finds that Judge Fuller's RFC assessment is supported by substantial evidence. Therefore, Kimberlee's

argument is repetitive of her challenge to the ALJ's RFC assessment, and need not be separately addressed. *Id.*[8]

---

[8] Kimberlee also asserts that no systems surveillance monitor jobs are actually available in the job market because federal law enacted after the September 11, 2001 terrorist attacks eliminated surveillance monitor jobs for the general public. (ECF No. 31 at 14–15.) However, the relevant inquiry for VE testimony is whether the testimony is consistent with the DOT. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). There is no requirement that the VE's testimony be consistent with Kimberlee's job research.

## IV.     CONCLUSION

Having reviewed the record as a whole, the affirmance of Judge Fuller's decision by the Administration's Appeals Council denying Plaintiff benefits is **AFFIRMED**. The Court issues an order consistent with this Memorandum Opinion.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: March 7th, 2024